UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B&H MEDICAL, L.L.C.,

       Plaintiff,                              Case No. 02-73615

v.                                                  Hon. Gerald E. Rosen

ABP ADMINISTRATION, INC., and
WRIGHT & FILIPPIS, INC.,

       Defendants.
_____/

## ORDER AWARDING RULE 11 SANCTIONS

       At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      January 13, 2006

PRESENT: Honorable Gerald E. Rosen
                 United States District Judge

In a prior Opinion and Order in this case, the Court granted in part Defendants' motion for sanctions under Fed. R. Civ. P. 11, and awarded sanctions limited to (i) the reasonable attorneys' fees and expert witness expenses incurred in Defendants' preparation and filing of their motion for summary judgment, and (ii) the reasonable attorneys' fees incurred in Defendants' preparation and filing of their motion for Rule 11 sanctions. Defendants subsequently submitted a bill of costs seeking a total award of $325,438.59, consisting of $128,280.00 in attorneys' fees, $194,258.09 in expert witness expenses, and $2,900.50 in costs. Plaintiff and its counsel then filed a response challenging this requested award in various respects, and Defendants filed a reply in

further support of their initial submission. Having reviewed these submissions, the Court finds, for the reasons set forth briefly below, that the award sought by Defendants is excessive, and that a sanction in the amount of $84,512.11 is appropriate under the circumstances.

Plaintiff's challenges to Defendants' requested award fall into three general categories. First, Plaintiff gleans from the Court's prior Opinion and Order a rigid date of April 21, 2004 upon which Plaintiff and its counsel should have recognized that Plaintiff's claims lacked evidentiary support, but instead elected to file a response in opposition to Defendants' summary judgment motion. This argument rests upon the premise that Plaintiff's discovery efforts did not fully conclude until non-party Blue Cross & Blue Shield of Michigan ("BCBSM") produced certain documents in late March of 2004. It follows, in Plaintiff's view, that the evidentiary strength of Plaintiff's claims could not have been fully and properly determined until all such discovery efforts had been completed. Accordingly, Plaintiff contends that the Court should disregard any fees or expenses incurred by Defendants prior to April 21, 2004.

Yet, as explained at length in the underlying Opinion and Order awarding summary judgment to Defendants, and then reiterated in the more recent Opinion and Order regarding Defendants' motion for sanctions, the evidentiary defects in Plaintiff's claims were far more extensive than any document production from BCBSM could possibly have cured. To take an obvious example, the Court's award of summary judgment to Defendants on Plaintiff's claim under § 1 of the Sherman Act rested

2

principally on the lack of evidence that the challenged exclusive dealing arrangement foreclosed competition in a substantial share of the relevant market.  As repeatedly observed in the Court's prior rulings, virtually all of the underlying data needed to perform such a market foreclosure analysis should have been in the possession of the parties themselves, without the need to rely on a non-party such as BCBSM.

In any event, even assuming that the discovery sought from BCBSM might have had some marginal bearing upon this or other issues in the case, the Court previously found that the delay in this discovery effort was almost entirely attributable to Plaintiff.  Plaintiff's lack of diligence and focus in pursuing discovery from BCBSM should not detract from Defendants' entitlement to insist, following a reasonable opportunity for discovery, that Plaintiff either identify evidentiary support for its claims or accede to their dismissal.  Accordingly, the Court adheres to its prior ruling that an appropriate award of sanctions in this case encompasses the reasonable fees and expenses incurred in Defendants' preparation and filing of their motions for summary judgment and for Rule 11 sanctions, without regard to whether some of these fees and expenses were incurred prior to the completion of Plaintiff's BCBSM-related discovery efforts.

Next, Plaintiff complains that the records produced by Defendants and their counsel are inadequate to permit a meaningful determination of the fees and expenses incurred in the preparation and filing of the two above-cited motions.  In some instances, for example, Defendants and their counsel have apportioned daily attorney billing narratives into allowable and excludable tasks, based upon counsel's after-the-fact

recollection and evaluation of the amount of time devoted to each task. Plaintiff protests that the Court cannot meaningfully assess the accuracy of this determination, absent more detailed daily billing entries that specifically reflect the amount of time spent on each discrete task. To accept this contention, however, would be to mandate an extensive minute-by-minute recordkeeping scheme that, so far as the Court is aware, is not customary in the practice of law. So long as the records are reasonably detailed — as the daily billing records of defense counsel are in this case — and the method of apportionment is likewise reasonable — and Plaintiff advances no specific argument to the contrary — there is no impediment to the Court's determination of an appropriate sanction.

The Court finds considerably more merit, however, in Plaintiff's final set of objections regarding the excessiveness of the fees and expenses sought by Defendants. Plaintiff observes, as an initial matter, that Defendants' attorneys claim to have expended nearly 650 hours in preparing and filing the motions for summary judgment and for sanctions, resulting in attorneys' fees in excess of $128,000. On top of this, Defendants have included the *entirety* of their expert's work and expenses, totaling 490 hours and over $194,000 in fees, in the overall cost of preparing these two motions. Plaintiff submits that it is patently unreasonable to claim, as Defendants do here, that over 1100 hours were spent and over $320,000 in fees were necessarily incurred in the preparation of Defendants' two motions.

The Court agrees. Regarding the attorney fee portion of the requested award, the

Court readily concludes that it is unreasonable to attribute nearly 650 hours — which, after all, is about a third of a year's worth of billable hours for a fairly busy attorney — to the drafting of only two motions. The Court recognizes that Defendants' summary judgment motion addressed complex issues of federal antitrust law. Yet, at the end of the day, Plaintiff's claims suffered from fundamental and rather glaring evidentiary defects — a consideration that weighed heavily in the Court's decision to impose Rule 11 sanctions. Thus, it should not have been an especially onerous or time-consuming task to prepare a summary judgment motion that pointed out these deficiencies in Plaintiff's theories of recovery. The Court further notes that Defendants' summary judgment motion advanced a number of contentions that the Court either did not accept or found it unnecessary to address, and that Defendants' motion for sanctions was granted only in part. Under these circumstances, the Court finds that $42,760 in attorneys' fees, or one-third of the requested award, represents an amount reasonably incurred as a result of Plaintiff's continued pursuit of its claims after it was, or at least should have been, apparent that these claims lacked merit.

Regarding Defendants' request for an award of over $194,000 in expert witness expenses, the Court again finds that such an amount would be grossly excessive. First, Defendants have failed to persuade the Court that *all* of these expenses are fairly attributable to the process of preparing the motions for summary judgment and for sanctions, where Defendants' expert plainly provided considerable assistance in Defendants' discovery efforts and, more generally, assisted in developing a framework

and focus for Defendants' approach to this litigation. The expenses incurred in these efforts cannot fairly be linked to Plaintiff's Rule 11 violation.

The Court further agrees with Plaintiff that the $495 hourly rate charged by Defendants' principal expert, Dr. Lynk, is rather high, and that Defendants have failed to provide sufficient information to enable the Court to determine whether the hourly rates charged by other members of Dr. Lynk's staff are reasonable. Thus, while Dr. Lynk's analysis undeniably played a significant role in the Court's resolution of Defendants' summary judgment motion, and while the Court recognizes that the assistance of a qualified expert is both a necessary and a costly expense of antitrust litigation, the Court finds that expert expenses in the amount of $38,851.61, or 20 percent of the amount requested, are reasonably attributable to Plaintiff's violation of Rule 11.

Finally, beyond these specific instances of excessiveness in the award sought by Defendants, the Court also must be mindful of Rule 11's express mandate that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Plaintiff's counsel further observes that it is appropriate, and indeed necessary, to "inquir[e] into an attorney's ability to pay sanctions in order to prevent Rule 11 from being used as a vehicle to drive an attorney out of practice." Runfola & Associates, Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 375 (6th Cir. 1996) (internal quotation marks and citation omitted). While Plaintiff's counsel offers little in the way of supporting detail on this point, the Court has little difficulty in believing that the award of

over $325,000 sought by Defendants would work a significant hardship upon the ability of Plaintiff's counsel to continue in the practice of law. In light of these considerations of deterrence and financial hardship, the Court finds that an award of $81,611.61 in attorneys' fees and expenses, plus an additional $2,900.50 in costs, comports with the language and underlying purposes of Rule 11. Any greater amount, in this Court's judgment, would inflict harm on the law practice of Plaintiff's counsel without any commensurate increase in deterrent effect.[1]

---

[1] While the Court has significantly discounted the award sought by Defendants, it recognizes that even the reduced amount of over $80,000 in fees and costs will result in financial hardship to Plaintiff's counsel and his law practice. In this regard, however, the Court believes it important to recall that, at the initial pretrial conference in this case, the Court expressed serious reservations about the merits of Plaintiff's claims and questioned whether Plaintiff's counsel had the experience and resources to see a complex federal antitrust case through to a successful conclusion.

Accordingly, for these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's counsel shall pay to Defendants the amount of **$84,512.11** as a sanction for violating Fed. R. Civ. P. 11.

        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated:   January 13, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 13, 2006, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager